## WALKER *vs.* WEBBER.

A. covenanted with B. and others, to cut a canal from *Crotched pond* to *Long pond*, for the purpose of floating logs from one to the other and from thence to a market — and B. and others covenanted to sell to A. " *all the pine logs which they or either of them should haul or cause to be hauled in, or rafted into Crotched pond,*" for a term of years. In an action brought by A. against B. on this covenant, it appearing that the timber lands of B. and others were situated on *Stearn's pond*, about two miles above *Crotched pond*, the two being connected by a canal, and that this was the only way in which logs could be floated from *Stearn's pond* to a market, it was held that B. and others were bound to sell to A. logs hauled into *Stearn's pond* and floated into *Crotched pond*, as well as those hauled directly into *Crotched pond*.

*Held* also, that the covenants were *several*, and that an action might well be maintained against B. alone.

THIS was an action of *covenant broken*. Plea, *non est factum*, with a brief statement alleging, 1. That the instrument declared on does not support the plaintiff's declaration ; said instrument being a *joint* covenant and not several ; and being variant

from the declaration. 2. General performance. 3. That, the plaintiff, after the making the obligation declared on, and before any pretended breach thereof, waived any and all claims to the fulfilment thereof, and excused and acquitted the defendant therefrom.

The plaintiff, to maintain the action, introduced the instrument declared on, which purported to be mutual covenants between the plaintiff of one part, and the defendant and six others on the other part. The material parts of it were as follows, viz : " The " said *Walker,* on his part, covenants and agrees to make a canal " from *Crotched pond* to *Long pond,* in *Bridgton,* in the county " of *Cumberland,* suitable to convey logs from one pond to the " other, and that he will take and receive all the pine logs which " are fit for merchantable boards that the said *Webber* and others " or either of them haul or cause to be hauled or rafted into " *Crotched pond,* and boom them in well, for the term of fifteen " years." [Then followed stipulations as to the mode of fixing the price, security, &c.] " And the said *Webber* and others do " covenant and agree with the said *Walker,* his heirs and assigns, " that they will sell him all the pine logs which they or either of " them may haul or cause to be hauled in, or rafted into *Crotched* " *pond,* for the term of fifteen years and no longer," &c.

The plaintiff then offered evidence to show, that the defendant had sold to other persons, at different years since the making of the bond, a large number of logs lying in *Stearn's pond,* in *Sweden,* cut from his land in *Sweden.*

The counsel for the defendant objected to this evidence on the ground of its irrelevancy. But *Parris,* the presiding Judge, admitted it.

It appeared that the waters of *Long pond* communicate with *Sebago pond* and thence with *Presumpscot river,* which supplies the mills at *Saccarappa.* It was in evidence that in 1822 there was no water communication sufficient to float logs from *Crotched pond* to *Long pond,* and that in pursuance of his agreement, the plaintiff, at an expense of about $5000, exclusive of what he paid for water privileges, opened such a communication by means of slips, through which large quantities of logs have since been transported ; on which the plaintiff has received a toll of one

dollar per thousand for running logs from *Crotched pond* to *Long pond* and booming them in the latter. The canal and slips had been very productive property to the proprietor, and the opening them caused a great rise in the value of timber hauled into *Crotched pond,* and timber land in the vicinity. The distance between the two ponds is about two miles.

The opening of the canal was considered a very doubtful and hazardous enterprise at the time, and the contract was probably one of the inducements to opening the canal.

It further appeared, that *Stearn's pond* is about two miles distant from *Crotched pond;* and that a company was incorporated in 1823, to open a canal on the stream communicating between these ponds, for the purpose of floating timber from *Stearn's pond* to *Crotched pond,* which canal was subsequently opened; and that the expense of transporting logs from *Stearn's pond* to *Crotched pond* was twenty-one cents per thousand. Logs hauled into *Stearn's pond,* it appeared, could not be floated from thence to market in any way but through *Crotched pond* and *Long pond.* The timber lands owned by the defendant, and those covenanting with him, were contiguous to, and back of, *Stearn's pond.* One lot, No. 66, was situated about 200 rods from *Stearn's pond,* and about two miles from *Kezer river,* which communicates with the *Saco.* It was proved that timber had been hauled from this lot to *Kezer river;* and there was evidence tending to show that lumber bore a higher price on the *Saco* than on the *Presumpscot* waters; but it appeared that timber could be transported from said lot to market with less expense through *Stearn's pond* than through *Kezer river.*

There was evidence tending to prove, that the plaintiff had demanded of the defendant the logs by him hauled into *Stearns'* pond in the several years for which he claimed damages under the contract, but the defendant refused to sell them to the plaintiff under the contract, but did sell to others, excepting a quantity which the plaintiff purchased in 1828, but not under the contract — and the defendant contended, that by this purchase, the plaintiff waived his right to damages for not having these logs delivered to him under the contract. But the Judge instructed the jury, that if the plaintiff first demanded these logs under the con-

tract, and the defendant refused to deliver them, he waived no rights by his subsequent purchase.

It was contended by the defendant, that he was under no obligation to sell to the plaintiff any of his logs lying in *Stearns'* pond, nor any of his logs, unless they were conveyed by him into *Crotched pond*. But the Judge instructed the jury that they would consider the plaintiff as having the same right under the contract to purchase the defendant's logs in *Stearns'* pond, as he had to purchase them in *Crotched pond.*

The defendant contended further that if he was under obligation to sell to the plaintiff his logs in *Stearns'* pond, and the plaintiff was entitled to receive them in *Crotched pond,* there should be a deduction from the damages, of the expense of delivering them from *Stearns'* pond into *Crotched pond* — and the plaintiff contended that this expense should be added to the damages. These questions were reserved by the presiding Judge for the decision of the whole Court, instructing the jury to ascertain the expense of driving logs from *Stearns'* pond to *Crotched pond;* which they did, and found it to be twenty-one cents per thousand.

It was proved that the plaintiff received a toll on the passing of the logs in question through the canal from *Crotched pond* to *Long pond;* and the defendant claimed to have a deduction made from the plaintiff's claim for damages, on this account also ; there being evidence tending to show that the profit arising from the general toll, after defraying all the expenses of constructing and repairing the canal, and incidental costs considerably exceeded the actual expenditure annually required and incurred in transporting logs through it by the plaintiff. But the Judge declined so to instruct the jury.

A verdict was returned for the plaintiff, subject to the opinion of the whole Court, upon the case as reported.

*Davies,* for the defendant, made the following points.

1. The obligation in this case is *joint,* and therefore no action can be maintained against *Webber* alone.

2. The defendant has performed his covenants. He was to deliver to the plaintiff the logs he hauled or rafted into *Crotched pond* — this he has done. He did not covenant to deliver those hauled into *Stearns'* pond. The question therefore resolves

itself into a geographical one, *viz.*, whether *Stearns'* pond and *Crotched pond* are the same. We contend that they are entirely distinct. *Crotched pond* lies two miles above *Long pond* — and *Stearns'* pond two miles above the former — entirely distinct sheets of water — lying in different counties — and separated by natural obstructions, which were overcome by the cutting of a canal.

3. But it is contended that the contract is perfect in itself — that there is no such ambiguity in it as would let in parol proof to explain it. 7 *T. Rep.* 178; 3 *Stark.* 994 to 999; *Morton* v. *Chandler,* 7 *Greenl.* 44; *Haven* v. *Brown,* 7 *Greenl.* 421; *Hale* v. *Jewell,* 7 *Greenl.* 435.

In this case, to admit the testimony introduced by the plaintiff, to show that *Stearns'* pond was intended to be embraced in the agreement, would be to superadd a clause to a written agreement, which can never be done. 3 *Wilson,* 275; 2 *Wm. Black.* 1249; 12 *East,* 6; 12 *East,* 583; 2 *B. & P.* 565; 3 *Taunt.* 147; *Elder* v. *Elder,* 1 *Fairf.* 80.

4. If parol testimony be received at all, then the bonds offered in evidence by the defendant should also be received as explanatory, to some extent, of the contract declared on. As authority for this he cited, 1 *Stark. Rep.* 14; *Purrington* v. *Sedgley,* 4 *Greenl.* 345.

*Longfellow, Fessenden* and *Deblois,* for the plaintiff, to the first point, that the action might well be maintained against *Webber* alone, they cited, 1 *Saund.* 154; *Swett* v. *Patrick,* 2 *Fairf.* 179. 2. That the parol proof was properly admitted, they cited 10 *Mass.* 379; 10 *Mass.* 459; 14 *Mass.* 453. They then argued to show that the contract was intended to embrace logs hauled into *Stearn's pond,* as well as those hauled into *Crotched pond.*

WESTON C. J. delivered the opinion of the Court.

The defendant and other persons, being the owners of certain timber lands, in the neighborhood of *Crotched pond,* were desirous of obtaining a sufficient water communication, to float logs thence to *Long pond,* from which there already existed facilities to forward them to the mills at *Saccarappa,* where they were to be sawed for the *Portland* market.

Walker v. Webber.

As an inducement to the plaintiff, to make at his own expense a canal for this purpose, they covenanted to sell to him, upon certain terms prescribed, all the pine logs, which they or either of them, may haul or cause to be hauled in, or rafted into *Crotched pond*. It appears that logs could be forwarded through this channel at less expense than by any other; so that the plaintiff had a just expectation of receiving all the pine logs, which might be cut for market, from the defendant's land, and from the land of the other parties, covenanting with him. There was another route by *Kezer river* into the *Saco*, of which they were at liberty to avail themselves, whenever there were sufficient inducements to do so. But the benefit of all that were to pass by *Crotched pond*, was secured to the plaintiff.

To give the covenant any other construction, would deprive the plaintiff of the profit to which he looked, to reimburse himself the expenses of his enterprise. It was deemed hazardous and uncertain in the outset. He might sustain great loss, or realize large profits, from his undertaking. What was the profit, for which he stipulated? Whatever might remain of the proceeds of one half of the boards, and of the three dollars and fifty cents per thousand, which he was to receive upon the other half, after paying all the expenses. The profit resulted from the facility, created by the plaintiff. Independent of the instrument, upon which he declares, which was intended to secure the profit to himself, it would add so much to the value of the standing timber intended for that market. If the defendant was at liberty to sell his pine timber standing, or in its transit to *Crotched pond*, he would put this profit into his own pocket, and the right of the plaintiff under the covenant would be defeated. There were but two ways by which the logs could reach *Crotched pond;* either hauled by teams, or floated by water. Both these modes of ingress were provided for. From what quarter were those logs to come, which were expected to be rafted, or water borne, into the pond? It does not appear that there was any other stream, running into *Crotched pond*, except what came from *Stearn's pond*, above. But this, it is urged, would not admit of the passage of logs, at the time when this contract was made,

and could not, therefore, have been in the contemplation of the parties. But to this it may be replied, that if this had not been contemplated, there would remain nothing, which would require a stipulation, as to the logs, which might be rafted into *Crotched pond.*

If the canal, between that and *Long pond,* succeeded, it was doubtless intended to improve the communication with *Stearn's pond.* Accordingly we find that improvement immediately followed, by which the timber put into that pond, could be water borne, through *Crotched pond* to market. When put into *Stearn's pond,* it was on its way, and must necessarily pass through *Crotched pond.* That the design of the contract might not be defeated, all that was rafted or floated into that pond, was made subject to its provisions. The contract embraced all that the defendant might cause to enter *Crotched pond.* Whatever logs were put into *Stearn's pond,* were necessarily to take that destination. That was the effect, which was thus caused by the act of the defendant, and therefore within the contract.

There is no reference, in the covenant declared on, to any other instrument; and we are therefore not at liberty to avail ourselves of any other, in arriving at the intentions of the parties.

It does not distinctly appear upon what principles of calculation, the jury arrived at the damages, they found in favor of the plaintiff. But it does appear, that they allowed nothing for the expense of transportation from *Stearn's* to *Crotched pond,* which was twenty-one cents per thousand. That was an expense, which did not fall upon the plaintiff, as he was under the contract to receive the logs in *Crotched pond,* and it was therefore properly omitted in the estimate.

If the toll, paid to the plaintiff for passing his canal, by the purchasers from the defendant of the logs in question, exceeded a just equivalent for the facility enjoyed, it came from the pocket of the purchasers. It might, however, and probably did, diminish the value of the timber, before it passed the canal, and would thus fall upon the vendor. How much the excess was, the jury have not found. It is claimed as a gain made by the plaintiff, which should be offset against so much of damage, he sustained by a breach of the contract. If the jury, in estimating the

Walker *v.* Webber.

profit, which the plaintiff might have made, took into consideration the toll as one of the expenses previously to be charged, which being equitable and just, they may have done, the toll received would exactly balance the toll charged, in estimating the loss sustained by the plaintiff, who would thus receive only a fair indemnity. The defendant had no claim to a further deduction on that account. If he had broken his covenant, which the facts prove, the question for the jury was, what injury the plaintiff had thereby sustained. It does not appear, nor is it to be presumed, that they awarded him damages beyond the injury.

We are well satisfied, from the language of the instrument, and the authorities cited, that the defendant's covenant must be regarded as several.

*Judgment on the verdict.*